IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                                                   CASE NO.: 1:07cr15-SPM

HAROLD EDWARD BARANOFF,

        Defendant.
_____/

## ORDER DENYING THE MOTION TO SUPPRESS

**THIS CAUSE** comes before the Court on Defendant's Motion to Suppress Evidence; Request for Evidentiary Hearing; Incorporated Memorandum of Law in Support Thereof" (doc. 18) and the "Government's Response to Defendant's Motion to Suppress" (doc. 19).  On October 11, 2007, the Court held an evidentiary hearing on Defendant's motion.  For reasons set forth below, the Defendant's motion is denied.

*FACTS*

On May 15, 2007, police officers in Lafayette County, in the city of Mayo, were performing drug interdiction by stopping drivers for traffic infractions. During the stop, if there was no probable cause to search the vehicles, then the officers routinely asked the drivers for their consent for the officers to search the

vehicle. If the driver refused, then they were released after receiving a citation for the traffic violation.

On this same night, the Defendant was driving his Winnebago motor home on State Road 27.  As evidenced by the police dispatchers' log and the testimony of the officers, at 9:19 pm Deputy William Cranford stopped Defendant because Defendant had a broken taillight.  Sheriff Carson McCall arrived on the scene moments later.  Deputy Cranford radioed dispatcher Darby Gibson to request a check of Defendant's licence & registration.  Cranford asked for Defendant's consent to search the van.  Defendant refused.  Cranford asked if Defendant would wait until a narcotics detection dog arrived to smell the van.  Defendant refused.  Deputy saw no reason to hold the Defendant at the scene any longer, so at 9:30 p.m., eleven minuteslater, the Defendant was released.

Four minutes later, at 9:34 pm, approximately three and a half miles from where Defendant was first stopped, Defendant was stopped again–this time by Deputy Condy for weaving in the road.  As happened during the first stop, Sheriff McCall arrived on the scene moments later.  Condy radioed the same dispatcher to confirm Defendant's licence & registration.  Sheriff McCall did not tell Condy about the prior stop and check of the Defendant's license and registration.  When Condy walked up to the passenger-side window to talk to the Defendant, he observed a strong smell of cleaning products emanating from Defendant's vehicle and an open Bible laying inside of the motor home.  Additionally, Condy

noticed a religious bumper sticker with language about angels on it.  Deputy Condy testified that in his experience, religious symbols are often used to provide a cover from the person's illegal activities.  While Deputy Condy was speaking to the Defendant, Condy suspected that the Defendant was nervous.  Consequently, Condy asked Sheriff McCall to summon the narcotics detection dog officer to the scene.  Deputy Condy told the Defendant that the narcotics detection dog was in route to the scene.  During this time, Condy was writing two citations for the Defendant–one for swerving and another for the broken taillight.  Before Condy could finish writing the citations, about 13 minutes after the Defendant was stopped, Lieutenant Hempstead arrived on the scene with the dog.  The dog walked around the mobile home and gave a positive alert in the back section of the van.  Deputy Condy seized marijuana that was found inside.

### *ARGUMENTS*

The Defendant argues that the second traffic stop by Deputy Condy was an invalid continuation of the first traffic stop and that this continued detention of the Defendant at that second stop was unlawful.  The Defendant also argues that the second stop extended beyond the time necessary to issue a citation and therefore violated his Fourth Amendment rights.  The Defendant claims that Deputy Condy was well aware of the first stop because it was broadcast on the police radio that all the officers had in their possession.  Furthermore, Sheriff McCall was at both traffic stops and he could have simply told Deputy Condy that

this person's license and registration had already been verified.

The Defendant believes that the purpose of the stop was completed at the initial stop. The reason for the extended detention (the second stop) was to allow time for the narcotics detection dog to arrive for further investigation. The Defendant alleges that the second traffic violation was only a pretext for a further detention. Therefore, the Defendant concludes that the second traffic stop was an illegal continuation of the first stop, and even if the second stop was truly independent and unrelated, the stop was prolonged beyond the time that was reasonably required to complete the investigation of the traffic violation.

The Government argues that at the second stop, Deputy Condy was acting independently; he was unaware of the previous stop. The Government argues that at the second stop, Condy observed the Defendant acting nervously after being asked to step out of the van. Condy also claims that he saw indicators of illegal narcotics activity (strong smell of cleaning supplies and religious materials in plain view). The Government argues that the Fourth Amendment allows officers to draw on their own experiences and make inferences about the suspiciousness of certain activity. As long as the officers were actively engaged in facilitating the traffic stop and the resulting investigation into the traffic violation, they can detain the driver at the scene. Furthermore, Deputy Condy's traffic stop was legitimate, and the Defendant's further detention was acceptable because there was a reasonable suspicion of criminal behavior.

*GOVERNING LAW*

The purpose of the Fourth Amendment is to prohibit unreasonable governmental incursion into one's person, home, papers or effects.  See United States v. Calandra, 414 U.S. 338 (1974).  The government cannot use evidence against a defendant if that evidence was obtained through an illegal search and seizure in violation of the defendant's Fourth Amendment rights.  See id. at 347.

An investigatory stop will be deemed constitutionally permissible and not a violation of the Fourth Amendment, if it is undergirded by reasonable suspicion.  Ornelas v. United States, 517 U.S. 690, 693, 116 (1996); see also United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000) ("in evaluating the constitutionality of an investigatory stop, the court must examine whether the officer's actions was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place") (citations and quotations omitted).  Similarly, the validity of a warrantless search of an automobile must be premised on probable cause.  Ornelas, 517 U.S. at 693; see also United States v. Saenz, 578 F.2d 643, 647 (5th Cir. 1978) ("Probable cause to search an automobile must be based upon belief, reasonably arising out of the circumstances known to the seizing officer, that the vehicle contains that which by law is subject to seizure and destruction.").

The subjective intentions of the police officer "play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S.

806, 813 (1996). In analyzing the holding in Whren, the Eleventh Circuit stated that the Supreme Court had

> squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit. Instead, the Court held that the constitutional "reasonableness" of a traffic stop must be determined irrespective of intent, whether of the particular officers involved or of the theoretical reasonable officer. The [Whren] decision conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred.

United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (citations and quotations omitted).

 An assessment as to whether law enforcement had reasonable suspicion to effectuate an investigatory stop is not a formalistic or routinized exercise. Rather, courts are to "look at the totality of circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 274 (2002). The existence of probable cause in this particular context, such as would provide justification for a warrantless search of an automobile, also turns on whether based on the "totality of the circumstances 'there [was a] probability that contraband or evidence of a crime [would] be found at a particular place.'" United States v. Goddard, 312 U.S. 1360, 1364 (11th Cir. 2002) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Specifically then, "[t]he principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision

whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas, 517 U.S. at 696.

## *ANALYSIS*

The first issue is whether Condy's traffic stop was an unlawful continuation of the first stop and therefore conducted in the absence of probable cause or reasonable suspicion.  Because a broken taillight and failure to drive inside the lane are both violations of Florida state traffic law, Deputy Condy clearly possessed probable cause to believe that a traffic violation had occurred. While investigating the circumstances surrounding the traffic stop, Deputy Condy observed indicators of further criminal activity.  These indicators were the basis for the reasonable suspicion that narcotics would be found in the Defendant's possession.  Though Deputy Condy was engaging in narcotics interdiction, his independent observations of the Defendant's behavior *after* he was pulled over is what served as the basis for further investigation into the possibility of additional criminal behavior.  The events of *this* traffic stop and the behavior of the Defendant, viewed from the perspective of an objectively reasonable police officer, amounted to reasonable suspicion that contraband would be found in the Defendant's possession.  Furthermore, according to Whren and Holloman, even if Deputy Condy stopped Defendant Baranoff because Condy had heard about the previous traffic stop and Condy wanted to investigate whether Baranoff

possessed narcotics, as long as there was a legitimate traffic violation observed by Condy, then his decision to stop Defendant Baranoff was not pretextual, and thus, not a violation of the Defendant's Fourth Amendment rights.

With regard to the length of time that the Defendant was detained, the question is whether the Defendant was detained longer than necessary. In a factually similar case, United States v. Hernandez, the Eleventh Circuit found that

> even if the duration of the pre-consensual detention. . . did extend beyond what might have been reasonable for just a routine traffic stop, the facts that came to light from the beginning of the stop – facts giving rise to reasonable suspicion that an additional crime was being committed – were more than sufficient to justify this detention of no more than seventeen minutes.

United States v. Hernandez, 418 F.3d 1206, 1211 (11th Cir. 2005). In this case, the strong smell of the cleaning liquid, the religious items in and on the van, and the Defendant's nervous behavior, combined with Deputy Condy's training and experience in narcotics investigations all created a set of circumstances giving an him "reasonable suspicion that an additional crime was being committed". Id.

Thus, the Court finds that Deputy Condy had reasonable suspicion to effectuate an investigatory stop of the Defendants' vehicle, and based on his observations of the entire situation, it was reasonable for him to continue talking to the Defendant and to request the narcotics detection dog. Deputy Condy was asking the Defendant to confirm information that Condy had to write into the citation. The narcotics detection dog arrived on the scene before Condy had completed the second traffic citation. The detention of the Defendant from the

time of the initial traffic stop to the time of the arrival of the narcotics detection dog–a total of 14 minutes–did not extend behind the time reasonable to complete the investigation associated with the traffic stop and to investigate the possibility that additional criminal activity was afoot.

### *CONCLUSION*

Having considered the totality of the circumstances, the Court finds that the Government sufficiently proved that the Defendant's detention at the second stop was not an extension of the first stop. The second stop was justified by independent probable cause that a violation of state traffic laws had occurred. Furthermore, the 14-minute duration of the second stop was no longer than necessary to complete the mission of issuing two traffic citations. Furthermore, Deputy Condy prolonged the detention of the Defendant because Deputy Condy had reasonable suspicion that narcotics would be found in the Defendant's possession. There was no violation of the Defendant's Fourth Amendment rights. Accordingly, it is

**ORDERED AND ADJUDGED** that the motion to suppress (doc. 18) is hereby *denied*.

**DONE AND ORDERED** this <u>twenty-ninth</u> day of October, 2007.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge